## J. M. LAPEYRE *v.* M. A. THOMPSON, GASPARD DIDIER, Intervenor.

Where underwriters execute a policy on which, at the time, there is the endorsement of the assured to pay it over to another, it is a recognition of the assignment, which binds the underwriters. An adjustment of the loss, and a promise to pay to the assignee is binding, and an attachment of the money by the president of the company, as funds belonging to the assured, cannot defeat the right of the assignee.

An adjustment and a promise by the insurers to pay in accordance with it, is equivalent to a settlement, arbitration or compromise, and concludes the parties. An action may be brought on it, or in an action on the policy itself, the adjustment will be evidence of the loss and its amount.

By the Court: It frequently happens, that one man may represent several persons or quality of persons. He may be an executor, a syndic, an alderman, a president of a company, a church warden, &c. What he does in one quality, cannot prejudice him in another. Nor can he transfer what he has in one quality to the other. In each quality, the personation is distinct and so maintained.                        •

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. *Lambert* and *Tissot*, and *St. Paul* and *Bonney*, for the intervenor. Marine policies are commercial instruments, transmitted from one part of the world to the other, in about the same manner as the goods they secure. Like bills of lading, their possession is *primâ facie* evidence of their ownership, and when this possession is known to have been made by the insured, with the knowledge of the underwriter, it constitutes a complete title.

Park on Insurance, page 450, note A, says, that unlike fire insurances, marine insurances are transferrable instruments.

Burrill's Law Dictionary, vol. 1, *vo.* Assignment, page 102: In assignments, the operative words are "assign, transfer and set over," but any words which show an intention to pass the property, will amount to an assignment.

United States Digest, vol. 11, page 611, No. 997: A policy having been assigned with the assent of the insurer, the assignee can claim for loss happening during the voyage before or after the assignment. 1004. Even after a loss, the insured may assign his interest in the policy without the consent of the insurer.

Same work, vol. 4, page 150 : A chose in action may be assigned for a valuable consideration, by the delivery of the evidence of the debt, without any written transfer. Same work, vol. 1, p. 244 : All choses in action may be assigned in equity.

No. 30. Thus, a contingent debt may be assigned, and when the debt becomes due on the happening of the contingency, the assignee may sue for it.

No. 36. A policy of insurance is assignable in equity, and every set off, between insurer and insured, prior to the assignment, is good against the assignee. See the following cases : Gourdon and Insurance Company of North America, 3 Yeates 327; 1 Binn. 429; 5 Mass. 201; 3 Mass. 515; 8 Wheaton's R. 278.

Watkins on Conveyancing, page 228 (Law Library, 4:) Any words which show an intention to pass the property, will amount to an assignment.

Barbour and Harrington's Equity Digest, vol. 1, page 187, No. 6: A bond may be assigned in general terms. Phillips on Insurance, vol. 1, page 38 : The mere delivery of the policy without any other act of assignment, for the purpose of securing the depositary against liabilities assumed by him, has been held to give such depositary a lien on the proceeds of such policy, for the purpose of

such security or indemnity against other claims or proceeds, of which such depositary had no notice at the time of the delivery to him."

*Benjamin* and *Micou*, for plaintiff.

By the court:

ROST, J. The judgment in this case, must be affirmed. The words written by the defendant on the back of the policy of insurance before the loss occurred, (paid over to *G. Didier*) were not a giving in payment, and are too informal to have the effect of a pledge against an attaching creditor; the defendant was about leaving for California, and the transfer can be viewed in no other light, than as an authority to collect whatever might become due under the policy, in case of loss by fire. There may have been an ulterior intention between the parties, that any sum thus collected by *Didier*, should go to pay the notes of the defendant which he held, but the sum in controversy was attached by the plaintiff before *Didier* collected it, and before it could have been extinguished by compensation.

Judgment affirmed, with costs.

~~~~~~~~~~~~~~~~~~~~~~

## SAME CASE—ON A RE-HEARING.

EUSTIS, C. J. The plaintiff recovered a judgment in an attachment suit against the defendant, and subjected to the satisfaction of it a sum of money, due on a policy of insurance by the New Orleans Insurance Company, which was claimed by *Didier*, an intervening party.

The district judge decided against *Didier*, on the ground that the transfer of the policy to him, was in fact under a contract of pledge, and that it ought to have been made in the form of the contract of pledge then required by the code, and not being so made, it had no effect against third persons, and held the sum due on the policy liable to attachment as the property of its original owner.

This judgment was affirmed by this court on appeal, and on the application of the counsel for the appellant, a re-hearing has been granted.

This insurance was on merchandise shipped by the mail steamer to San Francisco, and bears this memorandum : "Pay it over to *G. Didier. Margaret A. Thompson.* N. O. April 14th, 1850."

This transfer was on the policy at the time it was executed by the Insurance Company. A blank policy was furnished by the company to *Didier*, who made the application seemingly as the agent of *Mrs. Thompson*, and brought it back with the transfer written in the margin.

After the loss was known, *Didier* applied for his money. He was told by the secretary to leave the papers, and after examination, if found correct, that the company would settle the loss. The papers were left and submitted to *Mr. Lapeyre*, the president of the company. His opinion was, that they were correct, and that the company would settle ; and the secretary of the company told *Didier*, that the papers were correct and that the company would settle. *Didier* made this application for payment in his own name. The company did not settle, for the reason that an attachment of the money was levied, on the same day, in the hands of the company.

The president of the company is the attaching creditor. *Didier* is also a creditor, and was one at the time of the application for insurance. The application for insurance, was made by *Didier* on behalf of the defendant; he had

been her book-keeper, and he stated as a reason for the transfer of the policy to him, that she was on the point of leaving for California.

It is clear, that the assignment to *Didier* was made valid, as far as the company could give it effect, by their undertaking to make the policy payable to him without any reserve or qualification. It is equally clear that, except in case of error or fraud, neither of which is pretended to have existed, the company was bound by its promise to pay *Didier*, on the adjustment of the loss. This promise, for a sufficient consideration and in the regular course of business, could the principal officer, who is bound to execute it, by any means contrive to defeat for his own benefit? The question almost answers itself. The law of insurance attaches great importance to an adjustment and a promise by the insurers in accordance with it. It was formerly held equivalent to a note of hand. It is still held as equivalent to a settlement, arbitration or compromise, and concluding the parties. An action may be brought on an adjustment or in an action on the policy itself; the adjustment will be evidence of the loss and its amount. Park on Insurance, 134. 2d. Phillips on Insurance, 523. It became the duty of the president, to execute and carry into effect the contract of the company, and it was incumbent on him as a moral agent, not to defeat that which he was bound to perform. The business of insurance being one in which so large a number of persons are at times obliged to have doings, who can necessarily know little about its rules, must rest in a great measure on principles of equity and honor. And it becomes quite a matter of interest to insurance companies, as well as their customers, that no private interest of their officers should interfere with a prompt and just payment of all their dues.

It frequently happens that one man may represent several persons or quality of persons. He may be an executor, a syndic, an alderman, a president of a company, a church warden, &c. *Homo qui plures personas sustinet.* What he does in one quality cannot prejudice him in another. Nor can he transfer what he has in one quality to the other. In each quality the personation is distinct and so maintained. Institutes of the Roman law, by Makeldey § 117.

It seems to us, that the plaintiff after having authorized this adjustment and promise to pay the amount due on the loss to *Didier*, in favor of whom the company had originally made the loss payable, could not avail himself of his position and the information thus acquired, in order to defeat the payment, by seizing the fund in the hands of the insurance for his own benefit. To authorize such a proceeding, would be against those just and well established rules which must always be held up and adhered to in matters of insurance.

It does not appear that the plaintiff made use of any pretext or artifice to the delay or detriment of the intervening party, but acted, as we believe, under his own view of his legal rights. *Vide Berrella v. Merle*, 9 L. R. 216. Under this view of the case, we consider that our former decision cannot be sustained, and the judgment before rendered in this case is set aside. And proceeding to give such judgment as ought to be rendered, it is decreed, that the judgment of the district court against the intervenor, *Gaspard Didier*, be reversed, and that the said *Gaspard Didier* recover from the New Orleans Insurance Company, the sum of eighteen hundred and thirty-two dollars and twenty-two cents, with interest from the 8th of January 1850, until paid; and that the plaintiff pay costs in both courts.